LYONS, Justice.
Rosa Hunter and her son, Herbert Hunter, Jr., appeal from a summary judgment entered against them on their claim of malicious prosecution against Mooring Tax Asset Group, LLC (“Mooring”). We reverse and remand.

Procedural History and Factual Background

On April 23, 2008, the Hunters sued Mooring in the Mobile Circuit Court. They asserted a claim of malicious prosecution relating to a 2007 action against them by Mooring to quiet title to and obtain possession of certain property. On May 28, 2008, Mooring moved to dismiss the Hunters’ action pursuant to Rule 12(b)(6), Ala. R. Civ. P. Because Mooring’s motion attached supporting documents, it was treated as a motion for a summary judgment pursuant to Rule 12(b).[1] The Hunters responded to Mooring’s motion on October 17, 2008, and supported their response with an affidavit and other evidence. On November 2, 2008, without stating the reasons for its decision, the trial court granted Mooring’s motion and entered a summary judgment against the Hunters. The Hunters appealed.
The evidence presented to the trial court showed the following facts. On June 6, 2002, the Mobile County Revenue Commissioner (“the Commissioner”) sold property identified as “Parcel R023205400007070.02, Key # 1018437” (“Parcel 70.02”) to First Liberty National Bank (“First Liberty”) *881 because the owner had failed to pay taxes on the property. The tax deed identified the owners as “Neal, Willie & Ethel M.W.” and stated the parcel number, the key number, and a metes and bounds description of Parcel 70.02. First Liberty subsequently sold Parcel 70.02 to Mooring. The quitclaim deed reflecting that sale included the same parcel number, key number, and metes and bounds description as the tax deed. It is unclear precisely when First Liberty transferred Parcel 70.02 to Mooring.[2]
It is undisputed that, at all times relevant to this action, the Commissioner’s records showed that Parcel 70.02 was located at 1119 Hannon Road in Mobile. However, the Commissioner’s records also showed that property identified as “Parcel R023205400007070” (“Parcel 70”) was owned by Herbert Hunter, Jr., and was located at the same address. The record indicates that Parcel 70 was actually located at the 1119 Hannon Road address and that the Commissioner’s record regarding the location of Parcel 70.02 was mistaken.[3] It is unclear from the record whether Parcel 70 was owned by Herbert Hunter, Jr., or by Rosa Hunter, or by both jointly. It is also unclear from the record who, if anyone, resided on Parcel 70.
In response to Mooring’s motion, the Hunters presented an affidavit from Norma Hunter, Herbert’s wife and Rosa’s daughter-in-law, in which Norma stated:
“[W]e had ... been contacted by telephone sometime during 2005, and someone had indicated that our property located at 1119 Hannon Road in Mobile, Alabama, had been purchased at a tax sale. I told whoever was calling then, that there must be some mistake because we had always paid our property taxes, and that our property had not ever been foreclosed on by anyone.”
(Emphasis omitted.) Later in her affidavit, Norma implied that the “someone” she had spoken with was an employee of Mooring. The record does not contain any other evidence identifying to whom Norma spoke in 2005.
On January 16, 2006, based on the Commissioner’s records showing that Parcel 70.02 was located at 1119 Hannon Road, Mooring’s regional manager, Jeremy Martin, wrote to “Owner/Occupant, 1119 Han-non Road.” In the letter, Martin explained that “1119 Hannon Rd., Mobile, AL; County Parcel ID No. R023205400007070.02” had been sold at a tax sale and that Mooring now owned the property. On Mooring’s behalf, Martin demanded possession of the property and advised the “Owner/Occupant” of his or her rights.
In her affidavit, Norma stated that she assisted Rosa in responding to the January 16, 2006, letter. Norma stated that she contacted Martin by telephone, advised him that “they had the wrong property,” and gave him the parcel number and key number of “the property.” Norma stated that Martin asked her to send the parcel and key numbers to him via facsimile transmission and that she did so on January 23, 2006. The record includes a facsimile transmission cover sheet addressed to Martin with a handwritten note stating simply: “Pis. check key # & county parcel ID #’s.” The cover sheet does not indi *882 cate whether the facsimile transmission was actually sent or received.[4] Mooring did not submit any evidence confirming or denying Norma’s testimony regarding those communications.
Subsequently, on November 8, 2006, through counsel, Mooring wrote to “Ms. Rosa Hunter” at the 1119 Hannon Road address concerning: “Mobile County Parcel I.D.: R023205400007070.02, Property Address: 1119 Hannon Rd., Mobile, AL.” In her affidavit, Norma stated that neither she, Rosa, nor Herbert received any communications from Mooring between the January 16, 2006, letter and the November 8, 2006, letter. The November 8,- 2006, letter referenced the January 16, 2006, letter and advised Rosa that Mooring was going to “move forward with obtaining possession of the property.” The letter advised Rosa that if she did not take action to purchase Mooring’s interest in the property, Mooring would “take appropriate legal action to obtain possession.” Norma stated in her affidavit: “I personally contacted this law firm, [i.e., Mooring’s counsel,] for my mother-in-law ... within a week after we received this letter, and furnished them with all of the very same information showing them that the Key # and County Parcel # was different from the one that they had.” Once again, Mooring did not submit any evidence confirming or denying Norma’s testimony as to those communications.
On July 20, 2007, Mooring sued Rosa and several fictitiously named defendants in the Mobile Circuit Court (“the 2007 action”). Mooring stated in its complaint: “Defendants occupy, possess, or claim an interest in the property located at 1119 Hannon Road, Mobile, Alabama ..., and more particularly described” in the 2002 tax deed, which was attached. The complaint also attached a copy of the 2006 quitclaim deed to Mooring. Mooring sought to eject Rosa from the property under § 40-10-74, Ala.Code 1975, and to quiet title to the property. In a subsequent pleading, Mooring stated that Rosa was named as a defendant “[biased on information obtained from the ... Commissioner’s office indicating that R. Hunter resided at the address of the property.”
In her answer to Mooring’s complaint, Rosa stated: “[T]he real property located at 1119 Hannon Road, Mobile, Alabama is owned by Herbert Hunter, Jr., and not the Plaintiff.” She did not indicate that the property at 1119 Hannon Road was different from that property in which Mooring claimed an interest. It is undisputed that Mooring subsequently added Herbert as a defendant in its action.
The litigation progressed and, apparently through the discovery process and its own investigation, Mooring discovered that Rosa and Herbert did not in fact own an interest in Parcel 70.02. It is undisputed that Mooring then moved to dismiss its action against Rosa and Herbert. The trial court did so, with prejudice, on March 4, 2008.
*883 In her affidavit, Norma stated that, before Mooring commenced the 2007 action, she had advised Mooring or its agents at least three times that “they were wrong and had to have the wrong piece of property.” She testified:
“They were given the information and/or documents confirming that the Key # and County Parcel # of our property was different. There is absolutely no way that they could claim that this was just an innocent ‘mistake’ on their part, because I had personally given them the correct information to confirm that our property was different a number of times.... That is why the lawsuit that was filed on July 20, 2007, ... had to be malicious, and not just some innocent mistake.”
Norma then stated that Rosa and Herbert had suffered stress and emotional problems as a result of the 2007 action, that they had incurred legal fees in defending the action, and that Mooring “should be punished and prevented from doing things like this to others.”

Analysis

“Our review of a summary judgment is de novo. ‘A motion for summary judgment is granted only when the evidence demonstrates that “there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Rule 56(c), Ala. R. Civ. P.’ Reichert v. City of Mobile, 776 So.2d 761, 764 (Ala.2000). We apply ‘the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact.’ Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); System Dynamics Int’l, Inc. v. Boykin, 683 So.2d 419, 420 (Ala.1996). In order to defeat a properly supported motion for a summary judgment, the nonmoving party must present substantial evidence that creates a genuine issue of material fact. ‘Substantial evidence’ is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).”
Borders v. City of Huntsville, 875 So.2d 1168, 1176-77 (Ala.2003).
This Court has explained the elements of a malicious-prosecution claim as follows:
“In order for a claim of malicious prosecution to be submitted to a jury, the trial court must determine that the plaintiff has presented substantial evidence of the following elements: (1) that a prior judicial proceeding was instituted by the present defendant, (2) that in the prior proceeding the present defendant acted without probable cause and with malice, (3) that the prior proceeding ended in favor of the present plaintiff, and (4) that the present plaintiff was damaged as a result of the prior proceeding.”
Delchamps, Inc. v. Bryant, 738 So.2d 824, 831-32 (Ala.1999). Malicious-prosecution actions are “disfavored in the law.” 738 So.2d at 832.
It is undisputed that the Hunters have satisfied the first and third elements of their malicious-prosecution claim. Regarding the fourth element, although Mooring implies in its brief on appeal that the Hunters suffered no real damage because the 2007 action was ultimately dismissed, the Hunters, through Norma’s affidavit, described sufficient injury to create a jury question. Therefore, the parties’ primary dispute on appeal is whether *884 Mooring acted without probable cause and with malice in filing the 2007 action.[5]
Regarding probable cause, in a case involving malicious prosecution, this Court has stated:
“In malicious prosecution cases, ‘probable cause’ is defined as ‘such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty.’ Delchamps, Inc. v. Morgan, 601 So.2d 442, 445 (Ala.1992) (citation omitted [in Goodman ]).”
Wal-Mart Stores, Inc. v. Goodman, 789 So.2d 166, 174 (Ala.2000). “Thus, the determination of probable cause does not hinge upon whether [the Hunters] in fact [owned Parcel 70.02], but whether [Mooring’s] subjective belief under the circumstances led [it] to believe that [they did].” Id.
The Hunters turn our attention to the facsimile cover sheet sent to Martin by Norma and to Norma’s statement that she advised Mooring multiple times that it “had the wrong property” and provided it with the parcel identification number for Parcel 70. Mooring relies on the Commissioner’s records, which showed that Parcel 70.02 was located at 1119 Hannon Road. Mooring also notes the vague nature of many of the statements in Norma’s affidavit and directs attention to Rosa’s answer to its 2007 complaint in which she stated only that Herbert, not she, owned the property located at 1119 Hannon Road.
In Wal-Mart Stores, Inc. v. Goodman, supra, a Wal-Mart employee, Milner, accused Goodman of shoplifting and had her arrested. At the time of her arrest, Goodman had in her possession a receipt showing that she had purchased the item she was accused of shoplifting — a telephone. Goodman testified that she presented the receipt to Milner, but she was nonetheless arrested. Milner testified that she “gave no credence to the receipt” because she had observed Goodman in the act of shoplifting. The cause was submitted to a jury, which returned a verdict in Goodman’s favor and awarded her compensatory and punitive damages. 789 So.2d at 170-72. In considering whether the trial court erred in denying Wal-Mart’s post-judgment motion for a judgment as a matter of law, this Court explained:
“Goodman’s version of the event presented a jury question as to whether a reasonably prudent person acting in good faith would have made further inquiry before prosecuting. Dean Prosser wrote, on determining reasonableness:
“ ‘The appearances must be such as to lead a reasonable man to set the criminal proceedings in motion. The defendant is not necessarily required to verify his information where it appears to be reliable; but where a reasonable man would investigate further before beginning the prosecution, he may be liable for failure to do so.... ’
“William L. Prosser, Law of Torts, § 119 at 842 (4th ed.1971) (quoted in Atlantic Zayre, Inc. v. Meeks, 194 Ga.App. 267, 390 S.E.2d 398 (1990)) (using Prosser, Law of Torts, § 119, as a basis for its rationale that a store security guard could be found to have acted unreasonably in arresting a customer: the *885 customer had offered ‘over and over to give an explanation and to fetch [his] receipts [from his car], but was not permitted to.’). We find the reasoning of the Court of Appeals of Georgia persuasive under the circumstances presented by this case.
“The record reflects that Goodman, at the time of the apprehension, presented to Milner a receipt that matched the product code of the merchandise Goodman had allegedly concealed. Although the receipt was dated seven days before the date of the apprehension, Milner made no effort to verify its legitimacy. Before calling the police, she did not confirm with the customer-service-desk employees whether Goodman had, in fact, attempted to exchange the telephone; nor did she confirm with the store greeter whether Goodman had entered the store with the telephone. Therefore, the question whether a reasonable person acting in good faith would have investigated the situation further before proceeding with the arrest was disputed; the trial court correctly allowed the jury to decide the issue of probable cause.”
789 So.2d at 174-75.
Similarly, in this case, the question whether a reasonable person acting in good faith would have investigated the situation further before proceeding with the 2007 action was disputed. The Hunters presented evidence indicating that they communicated with Mooring in early 2006, denied that the property at 1119 Hannon Road had been sold in a tax sale, and provided Mooring with a parcel identification number for the property located at 1119 Hannon Road, Parcel 70. Mooring did not present evidence showing that it took any steps in response to this information, such as inquiring further of the Hunters, performing a title search of Parcel 70.02, or confronting the Commissioner with the conflicting information. Such evidence may ultimately be submitted at trial, and a jury may conclude that Mooring in fact had probable cause to initiate the 2007 action; however, the Hunters have presented sufficient evidence of a lack of probable cause to submit the question to the jury.
Even so, the Hunters must also present substantial evidence indicating that Mooring acted with malice. Bryant, 738 So.2d at 832 (“[W]hen probable cause is shown to be lacking, malice is essential to recovery.”); see also Willis v. Parker, 814 So.2d 857, 864 (Ala.2001) (“[I]n order for Parker to succeed on his malicious prosecution claim, he must have proved that Willis pursued the first eviction action both with a lack of probable cause and with the presence of malice”).
This Court has explained: “Malice in [a malicious-prosecution] action implies the intentional doing of a wrongful act to the injury of another.” Huffstutler v. Edge, 254 Ala. 102, 104, 47 So.2d 197, 199 (1950). However, malice does not require “evidence of a desire to injure.” Bryant, 738 So.2d at 833 (citing Lunsford v. Dietrich, 93 Ala. 565, 569, 9 So. 308, 310 (1891)).
“Malice in a malicious prosecution action has been defined as whatever is done willfully and purposely, whether the motive is to injur[e the] accused, to gain some advantage to the prosecutor, or through mere wantonness or carelessness, if at the same time wrong and unlawful within the knowledge of the actor. Gulsby v. Louisville & Nashville RR Co., 167 Ala. 122, 52 So. 392 [ (1910) ].”
Dillon v. Nix, 55 Ala.App. 611, 613-14, 318 So.2d 308, 310 (Ala.Civ.App.1975); see also Willis, 814 So.2d at 863-64 (quoting Dil *886 lon). This Court has more fully explained:
“ ‘There need be no personal ill will, hate, desire for revenge, or other base and malignant passion. Whatever is done willfully and purposely, whether the motive be to injure the accused, to gain some advantage to the prosecutor, or through mere wantonness or carelessness, if it be at the same time wrong and unlawful within the knowledge of the actor, is in legal contemplation maliciously done.’
“[Lunsford v. Dietrich, 93 Ala. 565, 569, 9 So. 308, 310 (1891) ] (emphasis added). This standard suggests the low threshold for proof of malice, by including in the litany of predicates ‘wantonness or carelessness ’ (emphasis added). It also is tied, however, to circumstances where the conduct is ‘at the same time wrong and unlawful within the knowledge of the actor.’ Id. Alabama Pattern Jury Instructions: Civil (2d ed. 1993) (‘APJI’), Instruction 24.04, preserves the concept that recklessness, standing alone, is not sufficient to allow recovery:
“‘Malice may be inferred by the reckless institution of a criminal prosecution without information leading to a bona-fide belief that the person charged was guilty as claimed.’
“(Emphasis added.) ...
[[Image here]]
“Simple negligence alone, therefore, may underlie a decision to institute a proceeding that later is shown to suffer from a want of probable cause, but an inference of malice cannot be drawn solely from such negligence, because the good faith of the actor under such circumstances can constitute a defense. This Court, consistent with the foregoing analysis of the requirement of proof of more than simple negligence in actions alleging malicious prosecution, has declined to permit actions against municipalities alleging malicious prosecution because the liability is not within the traditional categories of ‘neglect, carelessness or unskillfulness’ appropriate for such actions. See Scott v. City of Mountain Brook, 602 So.2d 893, 894 (Ala.1992). Were it otherwise, the tort would be called ‘negligent prosecution.’ Bahakel v. City of Birmingham, 427 So.2d 143 (Ala.1983), overruled on other grounds, Franklin v. City of Huntsville, 670 So.2d 848 (Ala.1995).”
Bryant, 738 So.2d at 833-34. In Goodman, 789 So.2d at 174, this Court explained:
“Malice is an inference of fact, and it may be inferred from a lack of probable cause or from mere wantonness or carelessness if the actor, when doing the act, knows it to be wrong or unlawful. Bryant, 738 So.2d at 833. Personal ill will or a desire for revenge is not essential for a finding of malice. Delchamps, Inc. v. Larry, 613 So.2d 1235, 1239 (Ala.1992). However, an inference of malice drawn from the lack of probable cause may be rebutted by evidence showing that the defendant acted in good faith. Bryant, 738 So.2d at 832.”
Applying these principles to the facts of this case, we conclude that Mooring was certainly mistaken to the point of negligence in filing the 2007 action against Rosa and in later adding Herbert as a defendant. Mooring reminds us that nothing in the record shows that Mooring had actual knowledge that the Hunters did not own an interest in Parcel 70.02. However, see Hamme v. CSX Transp., Inc., 621 So.2d 281, 283 (Ala.1993), stating that to show wantonness “[t]he actor’s knowledge may be proved by showing circumstances from which the fact of knowledge is a reasonable inference.” As previously noted, Norma testified that she contacted a *887 representative of Mooring by telephone, advised him that “they had the wrong property,” and gave him the parcel number and key number of “the property.” Norma stated that the representative asked her to send the parcel and key numbers to him via facsimile transmission and that she did so on January 23, 2006. A jury could conclude that the information presented by Norma early in 2006 was so inconsistent with the view that the Commissioner’s records on which Mooring relied were accurate that failure to seek verification from the Commissioner’s office deprived Mooring of the basis for a bona fide belief in the accuracy of those records at the time it commenced the 2007 action. Accordingly, a jury could conclude that Mooring acted with wantonness and carelessness sufficient to support a finding of malice in the context of a malicious-prosecution action.

Conclusion

The evidence presented to the trial court created a question of fact for the jury as to the second element of the Hunters’ malicious-prosecution claim — that, in the prior proceeding, the present defendant acted without probable cause and with malice. Accordingly, the trial court erred in entering a summary judgment for Mooring. We therefore reverse the judgement and remand the cause to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and STUART, BOLIN, and MURDOCK, JJ., concur.

. Rule 12(b), Ala. R. Civ. P., states, in part:
“If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.”

. There are two dates on the quitclaim deed reflecting the transfer of parcel 70.02 from First Liberty to Mooring: February 10, 2006, and February 10, 2005. The Mobile Probate Court’s stamp shows that the deed was filed in March, but the day and year are illegible.

. An unauthenticated map in the record seems to show that Parcel 70 and Parcel 70.02 are adjacent to one another. The record does not show at what address Parcel 70.02 is actually located.

. The cover sheet also did not indicate how many, if any, documents were attached. However, the four pages following the cover sheet in the record are a deed, a Commissioner's record, and the unauthenticated map identified in note 3, supra. The deed shows a 2002 transfer of property to Herbert Hunter, Jr.; it includes only a metes and bounds description, but it identifies the address of the grantee as 1119 Hannon Road. The Commissioner's record states that Parcel 70 is located at 1119 Hannon Road and identifies Herbert as the owner. The map appears to have been prepared later, perhaps by the Hunters’ attorney, because it includes handwritten notes stating: “client's prop Lot 70; property described in comp, is 70.02.’’ Presumably, "client” refers to the Hunters and "comp.” refers to Mooring's complaint in its action to quiet title.

. The parties do not dispute that Mooring dismissed the 2007 action when it discovered the mistake in the Commissioner's records. Therefore, Mooring’s conduct at issue on appeal relates to its filing of the 2007 action, not to any continuance of the action after discovery of the mistake. See, e.g., Laney v. Glidden Co., 239 Ala. 396, 399, 194 So. 849, 851 (1940) ("A suit for malicious prosecution may lie, not only for the commencement of the original proceeding, but for its continuance as well.”).